1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7                    **EASTERN DISTRICT OF CALIFORNIA**

8

9

10  **MARCELONE HUGHES,**              )      **CV-F-07-1434 AWI**
                                       )      **CR-F-02-5370 AWI**
11              **Petitioner**,         )
                                       )      **ORDER RE MOTION TO VACATE,**
12        **v.**                        )      **SET ASIDE, OR CORRECT THE**
                                       )      **SENTENCE PURSUANT TO 28**
13  **UNITED STATES OF AMERICA,**       )      **U.S.C. §2255**
                                       )
14              **Respondent**.         )      (Docs. 80 and 81)
    _____ )
15

16

17                          **I. History**

18         On October 3, 2002, Petitioner Marcelone Hughes was indicted on seven counts: (1)

19  armed robbery of a Bank of the West in violation of 18 U.S.C. §2113(a) and (d); (2) brandishing

20  a firearm in connection with the Bank of the West robbery in violation of 18 U.S.C. §924(c)(1);

21  (3) armed robbery of a Golden One Credit Union in violation of 18 U.S.C. §2113(a) and (d); (4)

22  brandishing a firearm in connection with the Golden One Credit Union robbery in violation of 18

23  U.S.C. §924(c)(1); (5) possessing a semiautomatic assault weapon while being an unlawful user

24  of controlled substances in violation of 18 U.S.C. §922(g)(3); (6) possessing cocaine base in

25  violation of 21 U.S.C. §844(a); and (7) possessing marijuana in violation of 21 U.S.C. §844(a).

26  Doc. 1.[1]  The factual background of the charges are contested; the court sets out the history for

27  _____

28         [1]All citations to docket entries refer to filings in the criminal case (02-5370).

background only and does not necessarily take these facts to be adjudged as true.

On August 13, 2002, Petitioner and an unidentified accomplice robbed a Bank of the West located in Fresno, CA, taking $148,783.  Both individuals wore sunglasses and hats and were armed with guns (A.A. Arms Model A-P9, 9mm semiautomatic assault weapon) with which they threatened the tellers.  The tellers and customers were then ordered into the vault.  Included in the money stolen were specially bundled bait bills with serial numbers which were recorded by the bank.  The robbers left in a vehicle which had been reported stolen on August 11, 2002; they abandoned the vehicle after the robbery.

On August 26, 2002, Petitioner and an unidentified accomplice robbed a Golden One Credit Union located in Fresno, CA, taking $5,378.  Both individuals wore ski masks and were armed with guns (A.A. Arms Model A-P9) with which they threatened the tellers.  At this bank, the tellers present did not have access to the vault.  When the tellers did not provide enough money, Petitioner and his accomplice physically struck them.  Included in the stolen funds were specially bundled bait bills with serial numbers which were recorded by the bank.  The robbers left in a red Jeep Cherokee which had been reported stolen on August 22, 2002; they abandoned the vehicle after the robbery.  A witness saw Petitioner and another individual in a red Jeep Cherokee exiting the bank's parking lot approximately four minutes before the robbery.

On August 27, 2002, a police officer stopped Petitioner for speeding.  Petitioner did not have a license and was arrested for driving without a valid drivers license.  Upon searching the vehicle, the officer found an A.A. Arms Model A-P9 beneath the driver's seat.  A search of Petitioner's person revealed marijuana and approximately $400 in cash.  Included in the recovered funds was one of the bait bills stolen from Golden One Credit Union.  Upon searching Petitioner's apartment, police found rock cocaine and another firearm.  The police then received an anonymous tip that Petitioner was involved in the Bank of the West robbery.

Petitioner was represented by Francine Zepeda of the Federal Defender's Office.  The Government dismissed Count Six. Doc. 33.  A jury trial on the remaining six counts was held July 29-31, 2003.  The jury convicted Petitioner on Counts Three, Four, Five, and Seven. Doc. 38.  The jury could not come to a unanimous verdict on Counts One and Two and a mistrial was

declared for those charges.  On November 10, 2003, Petitioner plead guilty to Count One and the Government dismissed Count Two, per the terms of a plea agreement. Doc. 46.  Petitioner was sentenced on March 8, 2004. Doc. 54.  Petitioner received 135 months imprisonment for Counts One and Three, 120 months for Count Five, and 24 months for Count Seven, all to be served concurrently.  Petitioner also received 120 months for Count Four, to be served consecutively, for a total of 255 months imprisonment.  Restitution was set at $148,783 to the Bank of the West and $5,378 to Golden One Credit Union for a total amount of $154,161.

Petitioner timely appealed both his convictions and sentences to the Ninth Circuit. Doc. 57.  Ms. Zepeda initially represented Petitioner in his appeal, but withdrew and was replaced by Carolyn Phillips.  Petitioner's appeal was denied on May 4, 2006; the convictions and sentences were affirmed. Doc. 79.  Petitioner sought U.S. Supreme Court review.  Writ of certiorari was denied October 2, 2006. Hughes v. United States, 127 S. Ct. 304 (2006).   Petitioner's motion for relief under 28 U.S.C. §2255 was timely filed on October 3, 2007. Doc. 80.  Petitioner requested permission to refile his motion to include supplemental evidence, and then filed the supplement. Docs. 81 and 82.  All of Petitioner's filings thus far will be considered.

## II. Legal Standards

Title 28 U.S.C. §2255 provides, in pertinent part: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... may move the court which imposed the sentence to vacate, set aside or correct the sentence."  Habeas relief is available to correct errors of jurisdiction and constitutional error but a general "error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979).

Courts must "construe pro se habeas filing liberally." Laws v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003).  Under Section 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of

3

1  the case conclusively show that the prisoner is entitled to no relief.'" United States v. Blaylock,

2  20 F.3d 1458, 1465 (9th Cir.1994), quoting 28 U.S.C. §2255.  The court may deny a hearing if

3  the petitioner's allegations, viewed against the record, fail to state a claim for relief or "are so

4  palpably incredible or patently frivolous as to warrant summary dismissal."  United States v.

5  McMullen, 98 F.3d 1155, 1159 (9th Cir.1996), citations omitted.  Mere conclusory statements in

6  a Section 2255 motion are insufficient to require a hearing. United States v. Hearst, 638 F.2d

7  1190, 1194 (9th Cir.1980).

8

9                                    **III. Discussion**

10      Petitioner seeks habeas relief on four grounds.  First, he claims Ms. Zepeda mislead him

11 concerning the sentencing for Count One in light of dismissal for Count Two.  Second, Petitioner

12 alleges Ms. Zepeda was ineffective for failing to present an effective defense to Counts Three

13 and Four (the Golden One Credit Union robbery).  Third, Petitioner asserts the application of 18

14 U.S.C. §924(c)(1)(B)(i) for possessing a semiautomatic assault weapon in connection with Count

15 Four was unconstitutional as the issue was never presented to the jury.  Fourth, Petitioner argues

16 the amount of restitution is unconstitutional as he lacks the means to pay it.

17

18 **A. Ineffective Assistance of Counsel With Respect to Plea Agreement**

19      Petitioner alleges ineffective assistance of counsel in that while discussing the Plea

20 Agreement Ms. Zepeda predicted Petitioner would receive no punishment for the use of a gun in

21 Count One:

22     Movant expresses the fact that he was misled by counsel into pleading guilty to the bank
       robbery, (Count One) believing that the brandishing a firearm would be dismissed 'and he
23     would receive no punishment' for the gun. Movant specifically asked Counsel what the
       plea agreement meant and was told, he would waive his appeal rights and would plead
24     guilty to the robbery and that the brandishing would be dismissed and he'd get no
       punishment for that gun, but if he lost at trial then he would be sentenced for the
25     brandishing a weapon....At sentencing, everything happened as counsel said it would
       except one thing: Movant was punished for the gun use and recieved six points on his
26     offense level as provided by the U.S.S.G. for 18 U.S.C. §2113(a)(d)

27 Doc. 80, Petition, at 12.  Petitioner is correct that the offense level of Count One was increased

28 by six pursuant to USSG §2B3.1(b)(2)(B) for use of a firearm.  In Petitioner's case, that arguably

**4**

1   increased his guideline range from 87-108 months to 168-210 months.  Even assuming the

2   accuracy of Petitioner's assertions, the disparity between predicted and actual sentence does not

3   constitute ineffective assistance of counsel.

4         The Plea Agreement specified that Petitioner was pleading guilty to "Count One of the

5   Indictment charging him with Armed Bank Robbery, in violation of Title 18, United States Code,

6   Section 2113(a) & (d)." Doc. 46, Plea Agreement, at 4:13-16.  "Whoever, in committing, or in

7   attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any

8   person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device,

9   shall be fined under this title or imprisoned not more than twenty-five years, or both." 18 U.S.C.

10   §2113(d).  The Plea Agreement stated that the maximum sentence for Count One was 25 years

11   imprisonment and the maximum total sentence for all counts (Count One plus those for which he

12   was convicted) was 68 years imprisonment. Doc. 46, Plea Agreement, at 5:7-20.  Thus Petitioner

13   was on notice of the upper bound of possible sentences.

14         In the Ninth Circuit, an attorney's performance is termed deficient when he/she grossly

15   mischaracterizes the likely sentence to be received in counseling a defendant to plead guilty.

16   "Doganiere next argues he received ineffective assistance of counsel because his attorney told

17   him he would receive a sentence of not more than twelve years imprisonment if he pleaded

18   guilty. The district court sentenced Doganiere to fifteen years imprisonment, with a subsequent

19   twenty year term of probation. Doganiere's attorney's inaccurate prediction of what sentence

20   Doganiere would receive upon pleading guilty does not rise to the level of a gross

21   mischaracterization of the likely outcome of his case, and thus does not constitute ineffective

22   assistance of counsel." Doganiere v. United States, 914 F.2d 165, 168 (9th Cir. 1990), citations

23   omitted.  In a related context, the Ninth Circuit has affirmed the denial of a motion to withdraw a

24   guilty plea where defendant received a sentence of over 19 years despite defense counsel's

25   representations to defendant that he would receive a maximum of eight years. See United States

26   v. Garcia, 909 F.2d 1346, 1348 (9th Cir. Cal. 1990).  In cases where courts have found gross

27   mischaracterization, the sentence received has been of a different order of magnitude than that of

28   counsel's prediction. See Chacon v. Wood, 36 F.3d 1459, 1464 (9th Cir. 1994), superseded on

1   other grounds at 28 U.S.C. §2253(c), (three months predicted; ten years imposed); <u>Iaea v. Sunn</u>,

2   800 F.2d 861, 865 (9th Cir. 1986) (probation and/or short sentences predicted; multiple ten year,

3   twenty year, and life sentences imposed).

4          In a case with similar facts to the one at hand, a criminal defendant alleged ineffective

5   assistance of counsel where "original counsel filed a motion to withdraw as Defendant's counsel,

6   and filed an affidavit with the court in which he stated that, prior to Defendant's plea of guilty, he

7   had informed Defendant that 'it was [original counsel's] opinion that [Defendant] would not be

8   assessed the relevant conduct adjustment for the drugs involved in all remaining counts'" which

9   were dismissed pursuant to a plea agreement. <u>United States v. Gordon</u>, 4 F.3d 1567, 1569 (10th

10  Cir. 1993).  The Tenth Circuit concluded that "Defendant has failed to show that original

11  counsel's failure to predict the relevant conduct inclusion in his offense level constituted

12  ineffective assistance of counsel entitling him to relief. A miscalculation or erroneous sentence

13  estimation by defense counsel is not a constitutionally deficient performance rising to the level of

14  ineffective assistance of counsel." <u>United States v. Gordon</u>, 4 F.3d 1567, 1570 (10th Cir. 1993),

15  citations omitted.

16

17  **B. Ineffective Assistance of Counsel at Trial**

18         Petitioner argues counsel was ineffective at trial on three grounds, all having to do with

19  the Golden One Credit Union robbery: (1) not investigating and calling witnesses who gave

20  reports of a third suspect in a second vehicle; (2) not cross examining teller Augustin Casarez

21  who could not identify Petitioner despite momentarily seeing one of the robbers without his ski

22  mask; and (3) not providing a misidentification defense. Doc. 80, Petition, at 14.  Review of the

23  trial transcript shows that Ms. Zepeda spent most of her efforts on making the case that Petitioner

24  did not commit the Bank of the West robbery.  Her closing argument focused solely on the Bank

25  of the West robbery (Counts One and Two) to the exclusion of all else: "Count number five,

26  count number seven, my client already admitted, by stipulation, that he was in possession of a

27  firearm. So I'm not going to even talk to you about those counts. What I really want to do is talk

28  to you about the Bank of the West bank robbery." Doc. 41, July 30, 2003 Transcript, at 145:13-

**6**

18.  She went on: "I know it's easy for the government to come and say, 'Okay. This is Bank of the West and we know this happened, so now we're going - this is Golden One and now we're going to go backwards in time. We know he did this, so he must have done this one.' Where is the proof beyond a reasonable doubt that he committed the Bank of the West robbery? I would submit, ladies and gentlemen, that it is not there. And we would ask that you return not guilty verdicts. And that would be Count One, which is the armed robbery of the Bank of the West and in Count Two , as the judge read, that if he's not guilty of Count One, he cannot be guilty of Count Two necessarily. We would ask for not guilty on that count as well. Thank you." Doc. 41, July 30, 2003 Transcript, at 151:12-25.  Ms. Zepeda did not ask the jury to find Petitioner not guilty on Counts Three and Four, the Golden One Credit Union robbery counts, a fact the government picked up on and referenced in its rebuttal. Doc. 41, July 30, 2003 Transcript, at 154:10-15 ("And in this case, it wasn't even argued the defendant is guilty on the Golden One Credit Union robbery. He is the guy").

Based solely on the record presented thus far, the court can not make an evaluation of this claim.  "Just as a reviewing court should not second guess the strategic decisions of counsel with the benefit of hindsight, it should also not construct strategic defenses which counsel does not offer." Harris v. Reed, 894 F.2d 871, 878 (7th Cir. 1990).  To address the claim, the court requires a response from Ms. Zepeda.  This necessitates a limited waiver of attorney-client privilege from Petitioner.

**C. Sentence Based on Facts Not Proven To A Jury**

Petitioner asserts that his conviction in Count Four must be interpreted as determining a violation of 18 U.S.C. §924(c)(1)(A)(ii) for brandishing a firearm and not 18 U.S.C. §924(c)(1)(B)(i) for possessing a semiautomatic assault weapon.  The relevant text reads:

> (A)Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of

7

violence or drug trafficking crime--
    (i) be sentenced to a term of imprisonment of not less than 5 years;
    (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
    (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.
(B) If the firearm possessed by a person convicted of a violation of this subsection--
    (i) is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, the person shall be sentenced to a term of imprisonment of not less than 10 years; or
    (ii) is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler, the person shall be sentenced to a term of imprisonment of not less than 30 years.

18 U.S.C. §924(c)(1) (effective Nov. 13, 1998).  Specifically, Petitioner argues, "Movant was never put on notice of 'brandishing an assault weapon,' the Jury only convicted Movant of brandishing a <u>firearm</u>, and no evidence from the trial supported a 10 year sentence, as opposed to the appropriate seven (7) year sentence." Doc. 80, at 17, emphasis in original.  In essence, Petitioner alleges Section 824(c)(1)(B) lists elements of an offense and not sentencing enhancements.  This issue was addressed at sentencing, and the court concluded the language concerning "semiautomatic assault weapon" was a sentencing enhancement. Doc. 64, March 8, 2004 Transcript, at 9:8-11:9.  Since that time, there has been additional case law on the subject.

The legal uncertainty arises due to amendment of the relevant statute.  The prior version of Section 924(c)(1) (which is not applicable in this case) read:

Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years, and if the firearm is a short-barreled rifle [or a] short-barreled shotgun to imprisonment for ten years, and if the firearm is a machinegun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to imprisonment for thirty years.

18 U.S.C. § 924(c)(1) (effective Dec. 11, 1988 and repealed Nov. 13, 1998).  Of the older language, the U.S. Supreme Court found that, "The statute in question, 18 U.S.C. § 924(c), prohibits the use or carrying of a 'firearm' in relation to a crime of violence, and increases the penalty dramatically when the weapon used or carried is, for example, a 'machinegun.' We conclude that the statute uses the word 'machinegun' (and similar words) to state an element of a separate offense" the result of which is "the indictment must identify the firearm type and a jury

1   must find that element proved beyond a reasonable doubt." Castillo v. United States, 530 U.S.

2   120, 121 and 123 (2000).  Reviewing the newer language (applicable to this case), several circuit

3   courts have agreed that firearm type is a sentencing factor. See United States v. Harrison, 272

4   F.3d 220, 226 (4th Cir. 2001); United States v. Sandoval, 241 F.3d 549, 550-51 (7th Cir. 2001);

5   United States v. Gamboa, 439 F.3d 796, 811 (8th Cir. 2006); United States v. Cavely, 318 F.3d

6   987, 1000 (10th Cir. 2003); United States v. Ciszkowski, 492 F.3d 1264, 1269 (11th Cir. 2007).

7   In stark contrast, the Sixth Circuit analyzed the statute independently and concluded that "the

8   firearms types set out in [Section 924(c)(1)(B)] are elements of separate crimes, rather than

9   sentencing factors," based on recent U.S. Supreme Court precedents, including United States v.

10  Booker, 543 U.S. 220 (2005). United States v. Harris, 397 F.3d 404, 413 (6th Cir. 2005).  The

11  D.C. Circuit has noted the split but has yet to offer its opinion. United States v. Brown, 449 F.3d

12  154, 158 n.1 (D.C. Cir. 2006).

13          The Ninth Circuit has not formally spoken on the issue except to note in dicta that "Other

14  courts of appeals have concluded that under the amended version of the statute, the classification

15  of the weapon used is a sentencing factor, not an element of the offense. See United States v.

16  Sandoval, 241 F.3d 549, 551-52 (7th Cir.), cert. denied, 534 U.S. 1057, 151 L. Ed. 2d 566, 122

17  S. Ct. 649 (2001)." United States v. Arnett, 327 F.3d 845, 847 n.3 (9th Cir. 2003).  It must be

18  noted that Arnett was decided before the Sixth Circuit issued its opinion in Harris.  Nevertheless,

19  Arnett  provides good guidance as it specifically referred to the Seventh Circuit opinion in an

20  approving manner.  The Sixth Circuit itself noted that the structure of the new language creates a

21  presumption that firearm type is a sentencing factor rather than an element. United States v.

22  Harris, 397 F.3d 404, 413 (6th Cir. 2005), citing Harris v. United States, 536 U.S. 545, 553

23  (2002) (unrelated case).  Based on the present state of precedent, the court concludes that

24  Petitioner was properly convicted and sentenced for Count Four.

25

26  **D. Restitution**

27          Petitioner asserts that "restitution on this conviction is unlawful due to my being unable

28  to pay." Doc. 80, at 6.  Petitioner was ordered to pay $154,161 in restitution to the two banks.

1   Petitioner admits the issue was not raised on appeal as "appellate lawyer failed to present

2   unlawful plea claim, and restitution for reason I don't know." Doc. 80, at 6.  A petitioner moving

3   pursuant to section 2255 "procedurally defaults his claims by not raising them on direct appeal

4   and not showing cause and prejudice or actual innocence in response to the default." United

5   States v. Ratigan, 351 F.3d 957, 962 (9th Cir. 2003), citations omitted.  "Generally, to

6   demonstrate 'cause' for procedural default, an appellant must show that 'some objective factor

7   external to the defense' impeded his adherence to the procedural rule." United States v. Skurdal,

8   341 F.3d 921, 925 (9th Cir. 2003), citations omitted   Because Petitioner could have raised his

9   claim regarding restitution on direct appeal but did not, and has shown neither cause nor

10  prejudice, he is precluded from raising the claim on habeas.

11      Further, $148,783 of the restitution is pursuant to Count One, which Petitioner plead

12  guilty to.  The terms of the Plea Agreement specifically notes that Petitioner "gives up any right

13  he may have to bring a post-conviction attack on his convictions or his sentence. He specifically

14  agrees not to file a motion under 28 U.S.C. §2255 or §2241 attacking his conviction or sentence"

15  so long as "his sentence is consistent with the agreement set forth above." Doc. 46, Plea

16  Agreement, at 7:6-11.  Petitioner was on notice that the sentence could include "Restitution to

17  the Bank of the West, 1755 W. Bullard, Fresno, California, as may be ordered by the court." Doc.

18  46, Plea Agreement, at 5:23-25.  "The right to attack a judgment collaterally is statutory. A

19  knowing and voluntary waiver of a statutory right is enforceable. For this reason a prisoner may

20  not collaterally attack a judgment if the prisoner waived the right to do so." United States v.

21  Racich, 35 F. Supp.2d 1206, 1210 (S.D. Cal. 1999), citations omitted.  The standard mirrors

22  waiver of direct appeal rights: "A defendant's right to appeal is statutory, rather than

23  constitutional, in nature. Knowing and voluntary waivers of appellate rights in criminal cases are

24  regularly enforced. The sole test of a waiver's validity is whether it was made knowingly and

25  voluntarily." United States v. Nguyen, 235 F.3d 1179, 1182 (9th Cir. 2000), citations omitted.

26  On direct appeal, the Ninth Circuit noted that Petitioner waived his right to appeal his sentence

27  with respect to Count One. United States v. Hughes, 178 Fed. Appx. 703, 705 (9th Cir. 2006).

28  Thus, Petitioner has waived his claim with respect to the $148,783, which is the bulk of the

restitutionary amount.

Even assuming arguendo that Petitioner could surmount the procedural hurdles on this issue, his request for relief would be denied.  The Mandatory Victims Restitution Act of 1996 (18 U.S.C. §§3663A-3664) governs restitution.  Title 18 U.S.C. §3663A(a)(1) states "Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate." Further, "In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. §3664(f)(1)(A).  The Ninth Circuit examined the Mandatory Victims Restitution Act with respect to the Fifth, Seventh, and Eighth Amendments, finding it constitutional in the context of a conviction for bank robbery pursuant to 18 U.S.C. §2113. See United States v. Dubose, 146 F.3d 1141 (9th Cir. 1998).

### IV. Order

The first, third, and fourth claims for relief contained in the 28 U.S.C. §2255 petition are dismissed.  In order to examine Petitioner's second claim (for ineffective assistance of counsel at trial), the court may have to examine privileged communication between Petitioner and Ms. Zepeda.  If Petitioner wishes to proceed on this claim, he is directed to file with this court within thirty (30) days a waiver of attorney-client privilege to the limited extent required to obtain information relevant to his claim of ineffective assistance of counsel.

IT IS SO ORDERED.

Dated:   **August 7, 2008**          **/s/ Anthony W. Ishii**
CHIEF UNITED STATES DISTRICT JUDGE