UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff-Respondent<br><br>v.<br><br>MARCELONE HUGHES,<br><br>　　　　Defendant-Petitioner | CASE NO. 1:02-CR-5370-AWI<br><br>ORDER GRANTING AN EVIDENTIARY HEARING ON DEFENDANT'S PETITION FOR WRIT OF MANDAMUS<br><br>(Doc. No. 104) |

Petitioner Marcelone Hughes seeks a writ of mandamus compelling the U.S. Attorney for the Eastern District of California to file a Rule 35(b)[1] motion requesting a reduction in his sentence. Petitioner argues he provided substantial assistance, was told by two Assistant U.S. Attorneys ("AUSA's") for the Central District of California that a Rule 35(b) motion would be filed on his behalf, and contends Mr. Rice, the AUSA for the Eastern District, has refused to file the motion for constitutionally impermissible and arbitrary reasons.[2]

Respondent counters that a U.S. Attorney has broad discretion whether to file a Rule 35(b) motion, AUSA Rice proffered valid, constitutionally sound reasons why such a motion would not be filed in this case, and the AUSA's in the Central District had no authority to bind the Eastern District AUSA to any such arrangement. Respondent thus asserts that, in the absence of a Rule 35(b) motion, the Court has no authority to alter Petitioner's sentence.

The Court will grant Petitioner an evidentiary hearing concerning whether a factual basis exists to find the government is bound to any promise to file a Rule 35(b) motion.

---

[1] Citation to the "Rules" refers to the Federal Rules of Criminal Procedure, unless otherwise noted.
[2] The facts contained herein are taken as true for purposes of this Order only.

*Background*

In July of 2003, a jury convicted Petitioner of one count each of armed bank robbery, brandishing a firearm during the robbery, possession of a semiautomatic assault weapon as an unlawful user of controlled substances, and marijuana possession; Petitioner also pleaded guilty to a second count of armed robbery. *See* Doc. No. 56. The Court found Petitioner to have a Category III criminal history, and sentenced him to 135 months for the armed bank robbery and possession charges, and 120 months consecutive for the brandishing charge. *Id*.

Petitioner appealed, challenging the sufficiency of the evidence and a failure to proffer a lesser-included offense for the armed bank robbery count. *See* Doc. No. 79. The Ninth Circuit affirmed, stating "based on the facts of this case the jury could not rationally have concluded that [Petitioner] was guilty of unarmed bank robbery but not armed bank robbery." *Id*. Petitioner then filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, alleging issues of ineffective assistance of counsel, the propriety of a sentencing enhancement, and his inability to pay restitution; the Court denied the motion. *See* Doc. No. 80.

In December 2008, while imprisoned at FCI Victorville, in the Central District of California, Petitioner and another prisoner witnessed a "gang-related assault of another inmate." *See* Doc. No. 104 (the "Mandamus Writ"), at p. 1. John Rayburn, AUSA for the Central District of California, sought Petitioner's assistance in the government's case against the assailants, requesting that Petitioner testify before a grand jury and, if necessary, at trial. *Id*. Petitioner agreed to assist, and inquired as to whether his current sentence could be reduced in exchange. *Id*. AUSA Rayburn allegedly responded that while the conversation "was not apropriate [sic] at the time[,] once the case was finished, a motion for a reduced sentence would be filed on [Petitioner's] behalf in [his] sentencing District Court." *Id*. at p. 2. Petitioner was told by AUSA Rayburn "this was not a promise," but that if he cooperated he "would be taken care of." *Id*.

Petitioner testified against two assailants in the grand jury proceedings, one of whom pleaded guilty shortly afterwards. *Id*. Petitioner was placed in the witness protection program, and was contacted by AUSA Jerry "Bhenki" [sp], also of the Central District of California, to discuss Petitioner's testimony for the trial. *Id*. Petitioner asked AUSA Bhenki about sentence

2

reduction, and Bhenki allegedly responded he "was not authorized to discuss the matter while the case was still ongoing, but that as long as [Petitioner] remained truthful and in compliance with the government, he had no objection to filing a Rule 35 motion on [Petitioner's] behalf." *Id*. Petitioner testified at the trial of the second assailant, who was acquitted by the jury. *Id*.

After the case against the assailants concluded, AUSA Bhenki contacted Dawrence Rice, the AUSA for the Eastern District who handled Petitioner's bank robbery trial, to inform him the government would be submitting a Rule 35(b) motion on Petitioner's behalf due to Petitioner's substantial assistance in the assault case, and requested AUSA Rice file the motion with this Court.[3] *Id*. AUSA Rice protested, allegedly stating Petitioner's original robbery case was still "fresh in his mind" and therefore he would not file the 35(b) motion. *Id*. at 3.

AUSA Bhenki then told Petitioner he had "no reason to be discouraged and that the Government would do It's [sic] part and get the Rule 35(b) motion filed to [Petitioner's] District Judge." *Id*. However, no further action was taken by any other involved member of the government. *See, generally, Id*. Petitioner eventually filed the instant application for mandamus, seeking an order from this Court "compelling the Government to file a substantial assistance motion under Rule 35(b)." *Id*. at p. 1.

Thereafter, the Ninth Circuit recommended Petitioner's motion be stayed pending the Circuit Court's decision in a case related to a separate motion brought by Petitioner; this Court complied. *See* Doc. No. 114. On March 29, 2018, Petitioner requested the stay be lifted due to the delay in the Ninth Circuit proceedings; the Court granted this request, and ordered the parties to brief, *inter alia*, Petitioner's original Rule 35(b) motion. *See* Doc. No. 123.

## *Legal Standard*

Mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes." *In re Bundy*, 840 F.3d 1034, 1040 (9th Cir. 2016) (quoting *Cheney v. U.S. Dist. Court*,

---

[3] The U.S. Attorney for the Central District also utilized the testimony of the second witness to the prison-assault, and also submitted a Rule 35(b) motion to the AUSA for the District of Nevada on this witness's behalf. That prisoner was serving a sentence after pleading guilty to four counts of armed bank robbery, and was rated at sentencing as a category VI due to his lengthy criminal history. Unlike in Petitioner's case, the AUSA for the District of Nevada did file the Rule 35(b) motion on that witness's behalf, and the sentencing court reduced his sentence by 42 months. *See* Doc. No. 108.

3

542 U.S. 367, 380 (2004). As the writ is one of the most potent weapons in the judicial arsenal, the petitioner (1) must have no other adequate means to attain the relief he desires, and (2) must show that his right to issuance of the writ is clear and indisputable. *Id.* "[E]ven if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Id.*

*Analysis*

A district court generally "may not modify a term of imprisonment once it has been imposed [unless, *inter alia,*] expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." 18 U.S.C. § 3582(c); *Dillon v. United States*, 560 U.S. 817, 819 (2010). Rule 35(b)(2)(C) provides that "[u]pon the government's motion made more than one year after sentencing, the court may reduce a sentence if the defendant [provided] substantial assistance [which] involved . . . information the usefulness of which could not reasonably have been anticipated by the defendant until more than one year after sentencing and which was promptly provided to the government after its usefulness was reasonably apparent to the defendant." When a defendant has substantially assisted, the government has "the power, not the duty," to file such a motion. *Wade v. United States*, 504 U.S. 181, 185 (1992). In the absence of a government motion, "[a] sentencing court ordinarily cannot grant a downward departure for substantial assistance." *United States v. Cueto*, 9 F.3d 1438, 1441-42 (9th Cir. 1993); *United States v. Low*, 665 F. Supp. 2d 1203, 1206 (D. Haw. 2009) (collecting cases applying the precepts of *Wade* not only to 18 U.S.C. § 3553(e) and § 5K1.1 of the Sentencing Guidelines, but also to Rule 35(b) motions); *see also United States v. Awad*, 371 F.3d 583, 588 (9th Cir. 2004) ("5K1.1 and Rule 35(b) operate to provide substantially similar relief at entirely different stages of the process."). Simply, the government possesses a great deal of discretion as to whether to file a Rule 35(b) motion, similar to its "broad discretion" as to whom to prosecute. *See Wayte v. United States*, 470 U.S. 598, 607; *United States v. Goodwin*, 457 U.S. 368, 380, n. 11 (1982).

However, federal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion if they find that the refusal was based on an unconstitutional motive, arbitrariness, or was made in bad faith. *Wade*, 504 U.S. at 185-86; *United States v. Leonti*, 326

F.3d 1111, 1119 (9th Cir. 2003) ("[T]he government may rightfully decline to file a substantial assistance motion for any reason, so long as its decision is not arbitrary, based on an unconstitutional motive, or made in bad faith [pursuant to a plea agreement].") (citing *United States v. Quach*, 302 F.3d 1096, 1103 n. 3 (9th Cir. 2002)). "[A] claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing, [nor] would additional but generalized allegations of improper motive." *Wade*, 504 U.S. at 186. Rather, a defendant must make a "substantial threshold showing" by stating a claim supported by "evidence that the Government refused to file a motion for suspect reasons[,] or that the prosecutor's refusal to move was not rationally related to any legitimate Government end." *United States v. Treleaven*, 35 F.3d 458, 461 (9th Cir. 1994).

### A. *Unconstitutional Motives*

Unconstitutional motives have often been described by courts as ones based on "race" or "religion." *See Wade*, 504 U.S. at 186 ("[D]efendant would be entitled to relief if a prosecutor refused to file a substantial-assistance motion, *say,* because of the defendant's race or religion.") (emphasis added). However, the Ninth Circuit also deems as an unconstitutional motive "retaliation for exercising ones Constitutional or statutory rights." *United States v. Khoury*, 62 F.3d 1138, 1141-43 (9th Cir. 1995) (concluding the government's refusal to file for a downward departure in retaliation for the defendant's exercise of his right to jury trial permitted the court to exercise its own discretion to grant a downward departure); *Treleaven*, 35 F.3d at 462 (deeming the government's interference with the defendant's Sixth Amendment right to counsel prejudicial, and stating that "allowing such potentially unconstitutional behavior to go unremedied creates troubling incentives.").

"To punish a person because he has done what the law plainly allows him to do is a due process violation "of the most basic sort." *U. S. v. Goodwin*, 457 U.S. 368, 372 (1982). To draw out a claim of unconstitutional motive for retaliation, courts have applied the test used in vindictive prosecution cases. *See United States v. Murphy*, 65 F.3d 758, 762 (9th Cir. 1995) ("The issue in this case is whether the government refused to file a [downward departure] motion in order to punish Murphy for exercising his Sixth Amendment right to jury trial."); *U.S. v. Paramo*,

998 F.2d 1212, 1219 (3d Cir. 1993) (collecting cases and holding "it is an elementary violation of due process for a prosecutor to engage in conduct detrimental to a criminal defendant for the vindictive purpose of penalizing the defendant for exercising his constitutional right to a trial."); *U.S. v. Jenkins*, 67 F.3d 297 (4th Cir. 1995) (imposing the "realistic likelihood of vindictiveness" standard on a petitioner's accusation that the government refused to move for a downward departure due to his substantial assistance); *Sanchez-Beltran v. United States*, 2015 WL 4481556 at *4 (N.D. Cal. July 22, 2015) (citing to *Paramo* for the proposition that evidence of retaliation can be used to make the "substantial threshold showing" for an unconstitutional motive claim); *United States v. Arnett*, 2016 WL 3743108, at *11 (E. D. Cal, July 12, 2016) (same); *see also Wade*, 504 U.S. at 185 ("[W]e see no reason why courts should treat a prosecutor's refusal to file a substantial-assistance motion differently from a prosecutor's other decisions . . .") (citing to *Wayte*, 470 U.S. at 608–609 for the proposition that "[s]electivity in the enforcement of criminal laws is subject to constitutional constraints."). "To establish a prima facie case of prosecutorial vindictiveness, a defendant must show either direct evidence of actual vindictiveness or facts that warrant an appearance of such." *Nunes v. Ramirez-Palmer*, 485 F.3d 432, 441 (9th Cir. 2007) (quoting *United States v. Montoya*, 45 F.3d 1286, 1299 (9th Cir. 1995)). Direct evidence that punitive motives precipitated the decision can suffice. *United States v. Kent*, 649 F.3d 906, 914, (9th Cir 2011) (citing *Goodwin*, 457 U.S. at 384 ("[W]e of course do not foreclose the possibility that a defendant in an appropriate case might prove objectively that the prosecutor's [pretrial] charging decision was motivated by a desire to punish him . . . ."). In the absence of direct evidence, if a defendant demonstrates a reasonable likelihood of vindictiveness, the prosecution then has the burden of proving that "independent reasons or intervening circumstances dispel the appearance of vindictiveness and justify its [prosecutorial] decisions." *Id*.

    Here, Petitioner has alleged AUSA Rice was motivated by unconstitutional motives in refusing to file the Rule 35(b) motion, in that AUSA Rice is punishing him for asserting his Sixth Amendment right to effective assistance of counsel, as averred in Petitioner's 2007 § 2255 petition to vacate. AUSA Rice counters that he would not have used Petitioner as a witness in the prison-assault case due to Petitioner's history of making false assertions. He points to Petitioner's claims

6

of "actual and factual innocence" in his first § 2255 motion (Doc. No. 80), that despite the overwhelming evidence against him, Petitioner claimed he was misidentified, and claimed ineffective assistance of counsel for failing to present the misidentification defense. *See also* April 6, 2018 Opposition by USA, at p.15. AUSA Rice also argues Petitioner "was a dangerous criminal that [Rice] could not in good conscience help put back out on the streets early for self-serving cooperation as a jailhouse informant in a prison assault case." *See Id*. AUSA Rice allegedly stated this second reason to AUSA Bhenki when first contacted about filing the Rule 35(b) motion, that Petitioner's original robbery case was still "fresh in his mind" and therefore he would not file the 35(b) motion. *See* Doc. No. 104, at p. 3. The Court finds this motive constitutional and not retaliatory, for while prisoners have a Constitutional right to effective assistance of counsel, as well as a statutory right under § 2255 to challenge their sentence, this imparts neither a right to bring a frivolous claim nor the right to proffer falsities to the Court.

        *B. Arbitrariness*

        As for the "arbitrary" exception to a court's lack of review power, a close read of this term—in this context—indicates the U.S. Supreme Court intended "arbitrariness" to be analogous to a rational basis test. In *Wade*, the defendant argued the withholding of a substantial-assistance motion was arbitrary because the government's refusal to move was "because of factors that are not rationally related to any legitimate state objective," and the Court agreed that this was the proper framework. 504 U.S. at 186-187; *cf. United States v. Choe*, 230 F.3d 1368 (9th Cir. 2000) ("Additionally, the government cannot refuse to file a downward departure motion for arbitrary reasons, *i.e.*, reasons that are not rationally related to any legitimate governmental purpose."); *with United States v. Leonti*, 326 F.3d 1111, 1119 (9th Cir. 2003) ("the government may rightfully decline to file a substantial assistance motion for any reason, so long as its decision is not arbitrary, based on an unconstitutional motive, or made in bad faith."); *see also United States v. Marquez*, 198 Fed. Appx. 678 (9th Cir. 2006) (Government's refusal to file motion for downward-departure sentence based on defendant's substantial assistance, pursuant to terms of plea agreement, was arbitrary).

        In this case, the government recounts the violent nature of Petitioner's crimes, public

7

safety, and the need to enforce the sentence as its rationale why it would not file a Rule 35(b) motion on Petitioner's behalf.  These motivations are legitimate governmental ends, and AUSA Rice's refusal to file the motion was rationally related to such ends.  *Choe*, 230 F.3d 1368 (finding the government's refusal to file Rule 35(b) motion due to the "less than substantial quality of Choe's assistance" legitimate); *United States v. Valenzuela-Anaya*, 323 F. App'x 562, 563 (9th Cir. 2009) (rejecting the defendant's argument that the government's refusal to move for a downward departure was not rationally related to a legitimate end, even though defendant accepted responsibility for his crimes); *see also Wade, 504 U.S. at 187* (The government may base its decision to file on nothing more than "its rational assessment of the cost and benefit that would flow from moving.").  Therefore, in this context, the Court cannot say it has the authority to compel the Eastern District U.S. Attorney to file a Rule 35(b) motion on Petitioner's behalf due solely to "arbitrariness."

      The Court is aware of the disparity presented by Petitioner's case, when compared to his co-witness's case.  That witness was imprisoned for twice as many armed bank robberies, and was rated a Category VI in criminal history, as opposed to Petitioner's Category III rating.  That witness allegedly provided the same level of assistance to the Central District AUSA in the prison-assault case, and the Central District AUSA's allegedly followed the same procedure in requesting a Rule 35(b) motion via the Nevada AUSA.  This however, standing alone, cannot be a reason for a finding of arbitrariness under *Wade*, for as discussed, prosecutors have always been granted "wide latitude" in the exercise of discretion.  *Arnold v. McCarthy*, 566 F.2d 1377, 1388 (9th Cir. 1978); *see also Woods*, 2018 WL 317430 at *3-4.

      *C.  Bad Faith*

      A solid body of case law exists in the Ninth Circuit defining the bad faith prong of the *Wade* exceptions; this issue arises mainly in the context of the government's failure to move for a downward departure during sentencing pursuant to a plea agreement.  For example, in *United State v. De la Fuente*, the defendant agreed to plead guilty and testify against a co-defendant.  8 F.3d 1333, 1335 (9th Cir. 1993)  In exchange, the government promised to recommend a downward departure at sentencing, but then declined to do so, despite defendant's cooperation,

based on an office policy not to request sentences below the statutory minimum. *Id*. The Ninth Circuit found that the promise made in the plea agreement overrode any discretion the government possessed, resting on *Wade*. *Id*. at 1340 (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement on the prosecutor . . . such promise must be fulfilled."); *see also United States v. Flores*, 559 F.3d 1016 (9th Cir. 2009) (finding no breach of a promise to move for a downward departure upon defendant's substantial assistance where the government made a good faith effort to evaluate the defendant's substantial assistance and, in determining the assistance was "insubstantial," declined to move for a reduction in the sentence).

*United States v. Woods*, 533 Fed. Appx. 594 (6th Cir. 2013), is highly instructive as applied to Petitioner's unique fact pattern. There, the defendant witnessed a murder in a Kentucky prison where he was housed, which was located outside of his sentencing district of Tennessee. *Id*. at 596-97. The defendant was asked by the Kentucky AUSA to cooperate, and the defendant asked about a Rule 35(b) motion for a sentence reduction as an exchange. *Id*. The Kentucky AUSA replied by letter to the defendant, stating: "I continue to need your help. If you can find it in your heart to continue to assist me, I promise that your assistance will not be in vain." *Id*.; *see also Woods,* 2018 WL 317430 at *10. The defendant agreed to assist, and after he testified, helping to secure a conviction, the Kentucky AUSA contacted his counterpart in the Middle District of Tennessee to request a Rule 35(b) motion be filed. 533 Fed. Appx., at 599. The Tennessee AUSA declined to do so, citing the defendant's "breach of his plea agreement, failure to accept responsibility, efforts to obstruct justice, perjury and false allegations, the seriousness of the defendant's own criminal conduct, public safety factors, and a lack of timely, full, and truthful cooperation." *Id*. The defendant then filed a motion to compel the filing of the 35(b) motion, which the district court denied without an evidentiary hearing due to the government's rational basis and wide discretion. *Id*. The Sixth Circuit reversed, holding that if the government can "bargain away its discretion to make a substantial assistance motion" during sentencing to induce the defendant to enter a plea agreement, *United States v. Benjamin,* 138 F.3d 1069, 1073-74 (6th Cir. 1998), this same logic should apply to post-sentencing motions for reduction in sentence due

to a defendant's substantial assistance—i.e. a Rule 35(b) motion. *Id*. at 600. Thus, the Sixth Circuit ordered the district court conduct an evidentiary hearing to determine the scope of the representations made by the Kentucky AUSA. *Id*.; *see also United States v. Martinez*, 1995 U.S. Dist. LEXIS 6033, at *16-17 (C.D. Cal., Mar. 30, 1995) (holding that, in a case where an out-of-district AUSA promised a Rule 35(b) motion would be filed in exchange for the defendant's substantial assistance, specific performance would be ordered due to "the Government reneging on an agreement for downward departure[.]" ).

Here, Petitioner alleges that AUSA Rayburn and AUSA Bhenki sought his assistance in the prison-assault case. *See* Doc. No. 104, at p. 1. Petitioner asked each AUSA about filing a Rule 35(b) motion on his behalf, and alleges they responded affirmatively. AUSA Rayburn is alleged to have said that while the Rule-35 conversation "was not apropriate [sic] at the time . . . once the case was finished, a motion for a reduced sentence would be filed on [Petitioner's] behalf in [his] sentencing District Court," and that while "this was not a promise," if Petitioner cooperated he "would be taken care of." *Id*. at p. 2. AUSA Bhenki is alleged to have said he "was not authorized to discuss [a Rule 35(b) motion] while the case was still ongoing, but that as long as [Petitioner] remained truthful and in compliance with the government, he had no objection to filing a Rule 35 motion on [Petitioner's] behalf." *Id*. Petitioner then alleges he provided substantial assistance by testifying against both assailants and helping to secure a guilty plea against one. *Id*.

To the extent Petitioner attempts to argue that AUSA Rayburn and AUSA Bhenki could bind AUSA Rice to any promise to file a Rule 35(b) motion,[4] the Court finds current Ninth Circuit precedent and the plain language of Rule 35(b) supportive of this concept, and finds the Sixth Circuit's reasoning in *Woods* highly persuasive as to the outcome. Simply, the Sixth Circuit in *Woods* recognized the lack of meaningful distinction between the government's powers to file

---

[4] The Court is aware that in the reply to the U.S.'s Opposition (Doc. No. 128), Petitioner does not specifically assert the "bad faith" exception, and instead focuses on the "unconstitutional motives" and "arbitrariness" exceptions. However, Petitioner does state in his initial motion to compel that "[t]o ignore Movant's substantial assistance and not uphold the governments [sic] end of the arrangement, would be a violation of Movants [sic] Due process rights." This assertion, the numerous allegations that AUSAs Rayburn and Bhenki agreed to "take care of him", and the unique nature of these allegations, persuade the Court that Petitioner has not waived a "bad faith" argument. *See Woods*, 533 Fed. Appx., at 600 (declining to find waiver on the "bad faith" argument due to "the peculiarities of this case . . . ."

substantial-assistance motions pre-sentencing under § 5K1.1 and § 3553 and its power under Rule 35(b) post-sentencing. *See Woods*, 533 Fed. Appx., at 600 (finding a binding agreement post-sentencing by relying on *Benjamin,* 138 F.3d at 1073-74, a case about a pre-sentence binding agreement); *see also United States v. Moran*, 325 F.3d 790, 793 (6th Cir. 2003) ("This circuit has found that the only practical difference between Rule 35(b) and U.S.S.G. 5K1.1 is a matter of timing."). The Ninth Circuit has similarly found little distinction between these pre- and post-sentencing motions. *See Awad*, 371 F.3d at 588 ("5K1.1 and Rule 35(b) operate to provide substantially similar relief at entirely different stages of the process."). The Ninth Circuit has also instructed that, where the government has made a promise to file a motion for a reduction in sentence due to a defendant's substantial assistance, it cannot renege on this. *See De la Fuente*, 8 F.3d at 1340 ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor . . . such promise must be fulfilled.") (citing *Santobello v. New York*, 404 U.S. at 257, 262 (1971)). This of course could include any oral agreement entered into by the government, since "[t]he terms of oral plea agreements are enforceable, as are those of any other contracts, even though oral plea agreements are not encouraged by reviewing courts." *Brown v. Poole*, 337 F.3d 1155, 1159 (9th Cir. 2003) (citing *United States v. Monreal*, 301 F.3d 1127, 1133 (9th Cir. 2002)); *see also De La Fuente*, 8 F.3d at 1337 ("[p]lea agreements are contractual in nature and are measured by contract law standards."). Despite the irregularity of the out-of-district AUSA's alleged promises,[5] if AUSAs Rayburn and Bhenki have actually made these alleged representations on behalf of the government, the government may be bound to seek a sentence reduction upon Petitioner's substantial assistance. *See Woods*, 533 Fed. Appx., at 600-601; *Martinez*, 1995 U.S. Dist. LEXIS 6033, at *16-17; *see also* Rule 35(b)(1) (stating in plain language that a court may reduce a sentence "[u]pon the *government's* motion[,]"—as the rule fails to differentiate between AUSAs of different districts, and as AUSAs Rayburn and Bhenki are "the government," nothing in the rule appears to preclude them from making such promises).

---

[5] The Court is aware of AUSA Rice's assertion that the proper procedure for filing a substantial assistance motion, as dictated by the Department of Justice's internal U.S. Attorneys' Manual, was not followed. The Court makes no judgment on this contention, as by the USAM's own terms, it is non-binding and unenforceable in court. *See* U.S. Attorneys' Manual, 1-1.100 Purpose, 1997 WL 1943989, at *1; *see also United States v. Wilson*, 614 F.2d 1224, 1227 (9th Cir. 1980) ("[T]he guidelines in the United States Attorney's Manual . . . do not have the force of law.").

Petitioner has met his substantial threshold showing that a sentence reduction may be appropriate in this case. The nature and substance of AUSA Rayburn and Bhenki's representations, and the extent of Petitioner's assistance, are still to be determined, as the Court has based the current order on the assertions made in the parties' filings. See Doc. No.'s 104, 124, 128. Therefore, the Court will grant Petitioner an evidentiary hearing, to be held before a to-be-assigned magistrate judge, so that evidence of the AUSAs representations and of Petitioner's substantial assistance, and any related matters, may be adduced.

*Conclusion*

The Court finds Petitioner has made a "substantial threshold showing" that AUSAs Rayburn and Bhenki may have bound the government into filing the Rule 35(b) motion on Petitioner's behalf. *See Wade*, 504 U.S. at 186. Petitioner's assertions, if factually accurate, would demonstrate his right to issuance of a writ of mandamus, without which will leave Petitioner with "no other adequate means" to obtain a sentence reduction. *In re Bundy*, 840 F.3d at 1040; *cf. Woods*, 533 Fed. Appx. 594. The Court will therefore order an evidentiary hearing to address the factual bases for Petitioner's allegations.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The Clerk of the Court shall randomly assign a Magistrate Judge to this case; and
2. Once assigned, the Magistrate Judge shall hold an evidentiary hearing to determine whether a factual basis exists for Petitioner's assertions, and shall make findings and recommendations as to whether a writ of mandamus should issue that compels the United States to file a Rule 35(b) motion.

IT IS SO ORDERED.

Dated:   May 11, 2018                         _____
                                              SENIOR DISTRICT JUDGE

12