**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>MARCELONE HUGHES,<br><br>   Defendants. | CASE NO. 1:02-cr-05370-AWI-EPG<br><br>ORDER ON DEFENDANT'S MOTION FOR MODIFICATION OF TERMS OF RESTITUTION<br><br>(Doc. No. 154) |

Defendant Marcelone Hughes seeks a modification of the terms of his restitution order pursuant to 18 U.S.C. § 3664(k). For the reasons that follow, the Court will grant his motion.

**BACKGROUND**

In 2003, Hughes was convicted of two counts of armed bank robbery, one count of brandishing a firearm during a crime of violence, one count of possession of a firearm by a narcotics user, and one count of possession of marijuana. Doc. Nos. 38, 46 & 55. The Court sentenced him to 255 months of imprisonment and 60 months of supervised release. Doc. No. 55 at 3–4. The Court also imposed a special assessment of $500, a fine of $2500, and restitution in the amount of $154,161. Id. at 6. As indicated in the judgment, payment of these criminal monetary penalties was "due . . . immediately." Id. at 7.

In August 2018, the Court amended the judgment, reducing Hughes's term of imprisonment to 223 months. Doc. No. 144 at 1–2. The supervised release term and criminal monetary penalties amounts remained the same. Id. at 3, 6. Using slightly different language, the amended judgment stated that payment of the penalties, including restitution, was to be made in a "[l]ump sum payment" that was "due immediately." Id. at 7.

Hughes was released under supervision on March 22, 2019. Doc. Nos. 146 & 148.

**DISCUSSION**

Upon notice of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution, the court may adjust a previously ordered restitution payment schedule as the interests of justice require. 18 U.S.C. § 3664(k). Pursuant to this statutory provision, Hughes moves the Court to modify the terms of his restitution obligation, as they are reflected in the amended judgment. Doc. Nos. 154 & 158. Specifically, he asks the Court to eliminate the requirement that he immediately pay the restitution amount in full and instead impose a schedule for regular monthly payments that are consistent with his current financial condition. The government does not oppose Hughes's request for a monthly payment schedule, but it disputes Hughes's proposal for what the monthly amount should be and argues that a revised restitution order should still reflect that Hughes's restitution obligation is due immediately in a single lump sum. Doc. No. 157.

The Court will first address the propriety of the current restitution order, before turning to the parties' disagreement regarding an appropriate payment schedule.

### A.     Current restitution order

The full amount of restitution is to be based on each victim's losses and without consideration of the economic circumstances of the defendant. 18 U.S.C. § 3664(f)(1). Once that amount is set, however, the court must consider the defendant's financial resources, income, and obligations before specifying the manner in which, and the schedule according to which, the restitution is to be paid. § 3664(f)(2). In so doing, the court may require the defendant to pay the restitution amount in "a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments." § 3664(f)(3)(A); see also § 3664(f)(3)(B) (allowing, alternatively, an order permitting nominal periodic payments if the defendant's economic circumstances do not allow for more).

With his motion, Hughes first contends that, based on his financial condition at the time of

its entry, his restitution order should be modified to remove its current demand for his payment of $154,161.00 in a "lump sum . . . due immediately." Hughes argues that this outcome is governed by the Ninth Circuit's decision in United States v. Holden, 908 F.3d 395, 403–05 (9th Cir. 2018). Meanwhile, although not objecting to the addition of a monthly payment schedule, the government opposes Hughes's request in so far as it seeks the elimination of the "due immediately" language from the applicable restitution order. As the government would have it, a revised restitution order would indicate that the full amount was due immediately in lump sum payment, but also that any unpaid balance from that order would be due according to the newly imposed payment schedule. The government contends this approach is consistent with the Ninth Circuit's decision in United States v. Gagarin, 950 F.3d 596, 609 (9th Cir. 2020).

In Holden, the Ninth Circuit addressed a restitution order that both specified that the entire restitution amount was "due immediately" in a "[l]ump sum payment," and set out a schedule of small payments that the defendant was to make during his incarceration. 908 F.3d at 403. The Ninth Circuit first determined this restitution order was internally inconsistent, as it effectively commanded compliance with two contradictory directions. Id. at 404. The government argued this apparent inconsistency could be resolved by reading the payment schedule portion of the restitution order as conditional: namely, if the defendant cannot make full immediate payment, he must comply with the payment schedule. Id. The Ninth Circuit rejected this argument for three reasons: First, the restitution order did not include conditional language of this kind. Id. Second, the district court's finding at the sentencing hearing that the defendant was unable to immediately pay the full amount of restitution undercut any point of imposing such a conditional arrangement. Id. And third, "[t]he relevant statutory provisions can be read to suggest that requiring a single lump-sum payment of immediate restitution in full and setting a payment schedule are mutually exclusive orders." Id. (citing United States v. Martinez, 812 F.3d 1200, 1205 (10th Cir. 2015), and 18 U.S.C. § 3664(f)(3)(A)). Once the government's argument was rejected, the Ninth Circuit directed the lower court to strike from the judgment the immediate lump-sum payment requirement, explaining that it could not stand in light of the district court's finding regarding the defendant's financial condition. Id.

3

1    From this, the Court here finds that the current restitution order in this case must be
2 revised. Namely, there is no dispute that Hughes is not in a position to pay his full restitution
3 obligation immediately, nor was he such a position when the restitution order was first entered.
4 Under these circumstances, the Court must (and should have originally) set a partial payment
5 schedule in the judgment of conviction that is consistent with his actual financial condition.
6 Holden, 908 F.3d at 404 (citing Ward v. Chavez, 678 F.3d 1042, 1050 (9th Cir. 2012)). The Court
7 also agrees with Hughes that, in setting such a payment schedule, the revised restitution order shall
8 no longer refer to the restitution amount being "due immediately" in a "[l]ump sum payment."
9 The situation here is slightly different from that in Holden as the current restitution order is not
10 internally inconsistent. But if the Court were to adopt the government's position by issuing a
11 revised restitution order that includes both that language and a monthly payment schedule, it
12 would create the very inconsistency that Holden dictates should not exist.

13    In the face of Holden, the Court also disagrees with the government's reliance on Gagarin
14 as a basis for imposing its desired conditional restitution order. As an initial matter, the latter
15 decision did not address the statement in Holden that under the relevant statutory provisions an
16 order for the immediate repayment of full restitution is incompatible with one requiring repayment
17 in specified intervals. Holden, 908 F.3d at 404. But even putting this to the side, Gagarin was
18 distinguishable from Holden in ways that do not apply here. Notably, Gagarin rejected the instant
19 challenge to the propriety of a restitution order on grounds that, unlike in Holden, the lower court
20 had never found that the defendant lacked ability to pay according to a conditional schedule that
21 specified a lump sum payment was "due immediately" and any unpaid "balance" was "due . . . in
22 accordance with" an installment plan. Gagarin, 950 F.3d at 609. Here, in contrast, the Court will
23 newly impose a monthly payment schedule for Hughes's restitution obligation precisely because it
24 finds that he lacks the ability to comply with the current demand for immediate payment in full.
25 And given this finding, there exists no need to simultaneously reorder Hughes to make immediate
26 payment in full, despite all involved acknowledging that he cannot. Holden, 908 F.3d at 404.

27    Beyond Gagarin, the Court finds that the government's other justifications for using a two-
28 track restitution recovery scheme were rejected by the Holden court or run contrary to clear

4

statutory language.  For instance, to assuage concerns regarding future changes to the defendant's financial condition, the Ninth Circuit noted that relevant statutes provide mechanisms for the government or victims to pursue modification of a restitution payment schedule if the defendant's changed condition allows for quicker repayment.  Id. at 404–05 (citing 18 U.S.C. § 3572(d)(3), § 3664(k), and § 3664(n)).  And with regard to the government's contention that a "due immediately" requirement must remain to account for its own statutory obligation to enforce restitution orders, this Court emphasizes that applicable statutes entrust the district court, and not the government, with authority to determine how and when a defendant is to meet their restitution obligation.  § 3664(f)(2)–(3); see also Martinez, 812 F.3d at 1202, 1205–06 ("By statute, it is the district court—not the government—that determines how a defendant is to pay restitution.  Thus, the government can enforce only what the district court has ordered the defendant to pay." (citation omitted)).

In sum, the Court finds that the current restitution order is improper in so far as Hughes is financially unable to make immediate payment in full.  The Court will therefore revise the restitution order by striking that obligation and imposing a new payment schedule of partial payments at specified intervals based on his current financial condition (discussed below).  Finally, the Court will also order that Hughes be entitled to his 2020 federal income tax refund of $829 that was garnished by the government.  Doc. No. 154-1 at 8.  Had a proper restitution payment schedule been in effect (and assuming Hughes's compliance), the government would not have been able to garnish this refund without both violating the restitution order and acting beyond its statutory authority.  § 3664(f)(2); Martinez, 812 F.3d at 1202, 1206–07.  Rewinding things back to cure the original error demands that this garnishment also be undone.

### B.     New payment schedule

Striking the "[l]ump sum payment . . . due immediately" language still leaves an open question as to the proper payment schedule to impose in its place.  Hughes asserts and submits documents suggesting that this motion arose in part from recent directions from the government regarding the proper amount of restitution he should pay on a monthly basis.  Namely, in a pair of

5

1 letters to Hughes from the U.S. Attorney's Office, the government first sought to have Hughes
2 agree to a payment plan of $350 per month, and later a revised proposal of $300 per month. Doc.
3 No. 154-1 at 9–10, 12–13. Hughes asserts, without evidence but also without objection from the
4 government, that he has complied with his probation officer's instruction to pay $100 per month
5 since his release from prison. Doc. No. 154 at 4.

6 Moving forward, Hughes believes the regular payment amount should be less than the
7 government's request for $300 per month. Specifically, he proposes a revised restitution order
8 that requires him to make monthly payments at a rate of 3% of his net monthly income. This bar,
9 he states, would approximate the $100 per month that his probation officer has been advising him
10 to pay during his time on supervised release. He adds that this bar will also best promote his
11 further reintegration into society by allowing him to invest in himself, support his dependents, and
12 meet his obligations. He concludes by noting that as his income grows in the future, so will his
13 monthly payment.

14 The government counter-proposes that Hughes should be required to pay at least 10% of
15 his monthly gross income. It argues that this number better comports with the purpose of
16 restitution to compensate victims for the defendant's crimes.

17 Although Hughes offers some documentation and representations in his briefing regarding
18 his current financial condition, the Court cannot describe the information before it as complete.
19 Even so, the government agrees to most of Hughes's bottom-line figures for purposes of its
20 opposition to his motion. Doc. No. 157 at 7. Relevant here, the parties bring the following
21 numbers to the table:

- Average gross income per month of $3623.45
- Average net income per month of $3113.02[1]
- Average expenses per month (excluding restitution) of $2603.00

25 With these figures, Hughes's proposal would have him paying approximately $93.39 per
26 month ($3113.02 multiplied by 3%), whereas the government's proposal would have him paying

---

[1] Hughes originally provided a different figure, but did not object to the government's revised calculation of his average monthly net income in his reply brief. The Court finds the government's logic sound on this front.

6

approximately $362.35 per month ($3623.45 multiplied by 10%).

The Court finds a compromise position between these options, and will revise the restitution order to direct Hughes to pay on a monthly basis the greater of 5% of his monthly net income or $150. This schedule sets a floor, not a ceiling, and if Hughes wishes to pay more than this amount during a given month, he may do so. Importantly, this schedule also should allow Hughes to account for his financial needs and obligations as he reestablishes himself as a productive member of society, while still ensuring that he contributes a certain minimum amount to his restitution obligation every month.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Hughes's motion (Doc. No. 154) is GRANTED;
2. The judgment shall be AMENDED to reflect the following:
   a. Hughes's payment of the total criminal monetary penalties is to be completed in monthly installments of 5% of his monthly net income or $150, whichever amount is greater;
   b. This payment schedule is to begin immediately with issuance of this order; and
   c. This payment schedule does not prohibit the United States from collecting through all available means any unpaid criminal monetary penalty at any time, as prescribed by law.

IT IS SO ORDERED.

Dated:  October 14, 2021            _____
                                     SENIOR DISTRICT JUDGE